# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX TABATABAEE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>K. STANTORO, et al.,<br><br>　　　　Defendants. | Case No. 1:14-cv-01545-DLB PC<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>THIRTY-DAY DEADLINE |

Plaintiff Alex Tabatabaee ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on October 4, 2014. He names K. Santoro, Brian Marshall, C. Thompson, A. Ruiz, N. McKee, C. Ervin, M. Gomez, Thomas and Does 1-5 as Defendants.[1]

**A.　SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid,

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on October 20, 2014.

1

the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.    SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Kern Valley State Prison. The events occurred while Plaintiff was housed at Wasco State Prison ("WSP").

Plaintiff was housed at WSP from February 2, 2012, to August 9, 2012. His legal custodians were Warden Katavich and Defendant Deputy Warden Santoro.

Plaintiff contends that on June 10, 2012, while housed at WSP, he was admitted to the Correctional Treatment Center ("CTC") after a serious suicide attempt. On June 13, 2012, while still

2

housed in the CTC, Plaintiff was seriously injured as a result of staff negligence and deliberate indifference to his medical needs.[2]

On June 20, 2012, Plaintiff informed Defendants McKee and Thompson, his correctional case management administrators, of his intent to initiate staff complaints against the staff responsible for his injuries.

On June 23, 2012, Plaintiff's level of care was changed and he was discharged from the CTC.

On June 27, 2012, Plaintiff submitted a health care staff complaint to the Health Care Appeals Office at WSP.

On July 10, 2012, Chief Executive Officer Defendant Marshall reviewed Plaintiff's health care appeal and classified it as a staff complaint.

Plaintiff submitted a second health care staff complaint on July 12, 2012.

After submitting these appeals, Plaintiff contends that supervisory Defendants Santoro and Marshall, as well as Defendants McKee, Ruiz, Thompson and Thomas (his correctional case management administrators/staff), and with the help of Defendants Ervin and Gomez (classification staff representatives), "conspired by mutual understanding against Plaintiff and took retaliatory actions to subject Plaintiff" to a retaliatory transfer.  ECF No. 1, at 9.  The transfer was adverse and punitive.

To arrange for the transfer, Defendants Ruiz, Thompson, Thomas and Does, with the assistance of the classification staff representatives, generated fraudulent and manipulative classification chronos to justify transfer to a specific institution.  On information and belief, Defendants McKee and Thompson also generated a false chrono with a falsified date of June 11, 2012, to conceal the retaliatory actions.

On July 12, 2012, in conspiracy with other staff, Defendant Ervin endorsed Plaintiff for transfer to High Desert State Prison, Level IV-180 CCMS, which has harsher and more restrictive confinement conditions.  Defendant Ervin generated a false chrono dated July 12, 2012.

---

[2] The medical incident is the subject of <u>Tabatabaee v. Marshall</u>, 1:13-cv-00911-LJO-BAM.

3

On July 23, 2012, at about 4:30 a.m., Plaintiff was subjected to an "attempted failed retaliatory transfer" to High Desert State Prison.

On July 26, 2012, Defendant McKee told Plaintiff that there was a lot of talk about him, and "[her] new supervisor CCII Ruiz has gotten a call recently from the CEO about you. . ." Defendant McKee told Plaintiff that "it was decided" to arrange for his transfer. When Plaintiff asked about her supervisor's agenda against Plaintiff, Defendant McKee told Plaintiff that this is what happens when an inmate becomes a "headache" for administrators by filing staff complaints. Defendant McKee told Plaintiff that he would "hopefully" learn his lesson. ECF No. 1, at 10.

On July 26, 2012, Defendant Gomez, in conspiracy with Plaintiff's case management staff, endorsed Plaintiff for transfer to CSP-Sacramento and generated a false chrono.

On August 1, 2012, Plaintiff's level of care was changed back to "CCCMS" by his interdisciplinary team at WSP.

On August 6, 2012, while still housed at WSP, Plaintiff filed an appeal about the retaliatory transfers with the WSP Custody Inmate Appeals Office.

On August 9, 2012, with the assistance of Does 1-5, Plaintiff's case management staff completed their retaliatory transfer and Plaintiff was transferred to CSP-Sacramento, Level IV-180 EOP.

On August 17, 2012, Plaintiff submitted another appeal alleging a retaliatory transfer. However, WSP refused to process the appeals to cover-up the retaliatory transfer.

Plaintiff contends that the retaliatory transfer violated his First Amendment rights.

**C.   DISCUSSION**

    1.   Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir.2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir.1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir.2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir.1989)). "'To be liable, each participant in the conspiracy need not know the

4

exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Here, Plaintiff alleges a conspiracy amongst all Defendants to transfer him in retaliation for filing health care appeals. However, he supports his allegation with nothing more than a conclusory statement that Defendants "conspired by mutual understanding. . ." ECF No. 1, at 9. Plaintiff also suggests, without support, that Defendants Ervin and Gomez, in conspiracy with others, endorsed his transfers. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations and citations omitted). As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Insofar as Plaintiff alleges that Defendant McKee told him that various supervisors decided to transfer him, this allegation does not support a conspiracy amongst *all* Defendants.

2. First Amendment Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, Plaintiff alleges that on June 20, 2012, he told Defendants McKee and Thompson about his intent to file a grievance. He filed a health care staff complaint on June 27, 2012, and it was reviewed by Defendant Marshall on July 10, 2012. He submitted a second appeal on July 12,

2012.  Plaintiff then alleges that all Defendants entered into a conspiracy to carry out a retaliatory transfer.  For the reasons discussed above, Plaintiff has not sufficiently alleged a conspiracy.

As to his allegations of individual involvement, Plaintiff has not sufficiency established a nexus between his grievances and the transfers.  For example, although he alleges that he told Defendants McKee and Thompson that he was going to file a grievance, he does not put forth any facts to connect this to the transfers.  Similarly, Plaintiff alleges that Defendant Marshall reviewed the grievance, but Plaintiff again fails to connect Defendant Marshall's review with the transfers.  Retaliation is not established simply by showing adverse activity by Defendant after protected speech; rather, Plaintiff must show a nexus between the two.  See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir.2000) (a retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").

Plaintiff also alleges that Defendants Ervin and Gomez endorsed his transfers, but Plaintiff again fails to show that they did so *because of* his prior grievances.

Finally, Plaintiff's conversation with Defendant McKee is not specific enough to determine which Defendants were involved in the decision.  Plaintiff states that "[her] new supervisor Ruiz" received a call "from the CEO," and "it was decided to arrange for your transfer."  ECF No. 1, at 10.  While this may ultimately state a claim, Plaintiff's allegations are too vague to determine who was involved in the decision-making.

**D.** **ORDER**

Plaintiff does not state any cognizable claims.  The Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the mere

theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77; Starr v. Baca, 652 F.3d 1202, 1205-07 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend;
2. The Clerk's Office shall send Plaintiff a complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order, and
4. <u>If Plaintiff fails to comply with this order, this action will be dismissed, without prejudice, for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:  **March 11, 2015**                    /s/ *Dennis L. Beck*
                                                        UNITED STATES MAGISTRATE JUDGE